# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WILLIAM L.,[1]<br>        **Plaintiff,**<br>    v.<br>ANDREW SAUL, Commissioner of Social Security,<br>        **Defendant.** | NO. CV 20-5906-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Robert William L. ("Plaintiff") filed a Complaint on July 1, 2020, seeking review of the denial of his applications for Disability Insurance benefits ("DIB") and Supplemental Security Insurance ("SSI"). (Dkt. No. 1.) On August 5, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On March 31, 2021, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.) Plaintiff seeks an order reversing and remanding for further proceedings. (Joint Stip. at 23.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative,

---
[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

remanded for further proceedings. (*Id.* at 23-24.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF PRIOR PROCEEDINGS

On December 7, 2016, Plaintiff, who was born on August 6, 1970, filed applications for a period of disability, DIB, and SSI; he alleged disability commencing October 24, 2015 due to heart failure, high blood pressure, high cholesterol, cardiomyopathy, and pacemaker installation.[2] (*See* Administrative Record ("AR") 307-14, 330.) After the Commissioner initially denied Plaintiff's applications (AR 218-24), Plaintiff requested a hearing (AR 225-27). Administrative Law Judge Barry Robinson (the "ALJ") held a hearing on January 9, 2019. (AR 172-88.) Plaintiff and a vocational expert (the "VE") testified. (*Id.*) On March 13, 2019, the ALJ issued an unfavorable decision. (AR 91-104.) On May 13, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (AR 96.) He found that Plaintiff had not engaged in substantial gainful activities since October 24, 2015, his alleged disability onset date. (*Id.*) He determined that Plaintiff had the severe impairments of ischemic heart disease, chronic heart failure, and cardiomyopathy. (*Id.*) After specifically considering listings 4.02 and 4.04, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 96-97.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")

---

[2] Plaintiff was 46 years old at the time he filed his DIB and SSI applications, and 45 years old at his alleged disability onset date; he thus met the agency's definition of a person "younger person." *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

2

to perform sedentary work, "except that he can occasionally climb ladders but never ropes or scaffolds, and he should avoid even moderate exposure to hazardous machinery and unprotected heights." (AR 97.)

The ALJ found that Plaintiff could not perform any past relevant work, including the jobs of construction laborer (DOT[3] 869.687-026) and forklift operator (DOT 921.683-050). (AR 99.) He found that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not he had transferable job skills. (AR 100.) The ALJ then determined that, having considered Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of addresser (DOT 209.587-010), charge account clerk (DOT 205.367-014), and document preparer (DOT 249.587-018). (AR 100-01.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 101.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

Plaintiff raises twos issues: (1) whether the ALJ's RFC assessment was based on substantial evidence, and (2) whether the ALJ properly considered Plaintiff's testimony about his symptoms and limitations. (Joint Stip. at 4.) For the reasons discussed below, the Court concludes that remand is warranted because the ALJ failed to pose a complete hypothetical to the VE for vocational consideration and the ALJ erred in his credibility analysis.

//
//
//
//

I.      **Issue One: Whether Substantial Evidence Supports the RFC Assessment**

   A. **Legal Standard**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1); *Reddick*, 157 F.3d at 724; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Reddick*, 157 F.3d at 722. An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632; *see* 20 C.F.R. § 416.945(a)(3) (stating that Commissioner will assess RFC "based on all of the relevant medical and other evidence").

   B. **Evidence of Plaintiff's Treatment[4]**

In October 2015, Plaintiff presented with chest pain and a physical examination showed acute ST elevation myocardial infraction involving the left anterior descending coronary artery, coronary artery disease involving the native coronary artery of the native heart with unstable angina apectoris, and recurrent ventricular tachycardia. (AR 976-77.) Plaintiff recorded an ejection fraction of 40%.[5] (AR 976.) However, notes from the same period show

---

[4] The record consists of several hundred pages of medical evidence (*see* AR 388-1098), as well as opinion evidence contained in Plaintiff's initial disability determination (*see* AR 218-24). Plaintiff's central argument in the Joint Stipulation is that the ALJ failed to include a sitting limitation for vocational consideration. (*See* Joint Stip. at 5-10.) Plaintiff has stipulated that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as specifically stated in the Issues and Contentions section of the Joint Stipulation. (*Id.* at 4.) Accordingly, only the evidence cited by the ALJ in his decision or by the parties in the Joint Stipulation is summarized in this Order, as supplemented by any additional discussion the Court deems necessary for a full and adequate presentation of the relevant evidence in this case.

[5] An ejection fraction is a measurement of the percentage of blood leaving an individual's heart each time it contracts. *See* Rekha Mankad, M.D., *Ejection fraction: What does it measure*, MAYO CLINIC, available at

5

that Plaintiff had normal heart sounds without murmurs, clicks, rubs, gallops, or bruits. (AR 419.) Treatment notes from November 2015 show that Plaintiff had normal gait and coordination. (AR 584.) Later that month, Plaintiff experienced cardiac arrest. (AR 391.)

In December 2015, treatment records show that Plaintiff asked his provider to fill out unemployment paperwork. (AR 968, 1074.) In January 2016, Plaintiff recorded an ejection fraction of 20% to 25% and his provider described it as severely reduced. (AR 1065.) Plaintiff had two stents placed. (*Id.*) On March 7, 2016, Plaintiff presented with dilated cardiomyopathy and recorded an ejection fraction of 25% with no significant ischemia. (AR 993.) March 29, 2016 treatment notes show that providers placed an implantable cardioverter defibrillator (a pacemaker). (AR 1001.) In April 2016, July 2016, October 2016, and January 2017, Plaintiff presented for defibrillator checks—each time, he denied acute distress; he exhibited regular heart rate and rhythm; defibrillator checks showed that Plaintiff was doing well following implantation; he had normal heart sounds without murmurs, clicks, rubs, gallops, or bruits; he denied chest pain, chest pressure, palpitations, lightheadedness, cyanosis, weakness, or fatigue; he had normal S1 and S2 sounds; and he had strong and equal bilateral carotid pulses. (AR 981-82, 984-85, 987, 990-91.) May 2016 treatment notes also indicate that Plaintiff's exercise tolerance had improved from being abe to walk half a block to 5 blocks to 20 blocks. (AR 1059.)

In January 2017, Plaintiff was evaluated by his treating physician, Jamie Weiss, M.D., a cardiology specialist. (AR 1006-08.) Dr. Weiss opined as follows. Plaintiff could lift and carry less than 10 pounds occasionally, and 10 pounds frequently; stand and walk with normal breaks for 3 hours in an 8-hour day; and sit about 3 hours in an 8-hour day. (AR 1006.) Plaintiff could both sit and stand for 20 minutes without changing position, and had to walk

---

https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited May 7, 2021). A normal ejection fraction is about 50% to 75%, and a borderline ejection fraction can range between 41% and 50%. *See id.* A reduced ejection fraction may be caused by, *inter alia*, weakness of the heart muscle, such as cardiomyopathy; heart attack that damaged the heart muscle; heart valve problems; or long-term, uncontrolled blood pressure. *See id.*

around every 15 minutes for 15 minutes. (AR 1006-07.) Plaintiff needed the opportunity to shift at will from sitting or standing/walking, but did not need to lie down at unpredictable intervals during a work shift. (AR 1007.) Dr. Weiss based her findings on Plaintiff's history of COPD and cardiomyopathy. (*Id.*) She further opined that Plaintiff could twist, stoop (bend), climb stairs, and climb ladders occasionally, but could never crouch. (*Id.*) Plaintiff's reaching, handling, fingering, feeling, and pushing/pulling were not affected by his impairments. (*Id.*) Plaintiff had no restriction in his ability to withstand extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). (AR 1008.) Dr. Weiss stated that she anticipated that Plaintiff's impairments would cause him to be absent from work about twice per month. (*Id.*)

In March 2017, Plaintiff's record was reviewed by Albert Lizarraras, M.D., a state agency consultative examiner, in connection with his initial disability determination. (AR 194-97.) Dr. Lizarraras noted that Plaintiff experienced malaise, weakness, and shortness of breath; and that his medically determinable impairments of ischemic heart disease, chronic heart failure, and cardiomyopathy could reasonably be expected to produce his pain or other symptoms. (AR 194.) However, Dr. Lizarraras found that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone. (*Id.*) Dr. Lizarraras found Plaintiff's statements partially consistent with the record evidence, noting that Plaintiff's allegations about the severity of the impairment were not fully supported by the objective evidence. (AR 195.) Dr. Lizarraras did not review any opinion evidence. (*Id.*)

Dr. Lizarraras assessed that Plaintiff had the following RFC and exertional limitations: he could lift and/or carry 10 pounds occasionally and frequently; stand and/or walk with normal breaks for a total of 2 hours; and sit with normal breaks for a total of 6 hours in an 8-hour workday. (*Id.*) Plaintiff had no limitation in his ability to push and/or pull, except as otherwise noted for his ability to lift or carry. (*Id.*) He had no limitation in his ability to climb

ramps/stairs, balance, stoop, kneel, crouch, and crawl; and his had occasional limitation in his ability to climb ladders, ropes, and scaffolds. (AR 196.) He had no manipulative, visual, or communicative limitations. (*Id.*) Dr. Lizarraras noted that Plaintiff had environmental limitations, but was unlimited in his ability to withstand extreme cold and heat, wetness, humidity, noise, and vibration. (*Id.*) Dr. Lizarraras noted that Plaintiff's postural and environmental limitations were based on the fact that Plaintiff had a pacemaker. (AR 196-97.) Dr. Lizarraras concluded by stating that more weight was assigned to the longitudinal evidence in the record that documented ischemic cardiomyopathy, successful stenting of Plaintiff's right coronary artery and left circumflex, and successful implantation of a pacemaker. (AR 197.) He observed that Plaintiff had not experienced cardiac heart failure or cardiac arrest since the pacemaker was installed in March 2016. (*Id.*)

When Plaintiff presented for defibrillator checks in May 2017, July 2017, December 2017, January 2018, March 2018, and June 2018, he was not in acute distress, he continued to have unremarkable and relatively normal findings, and defibrillator checks showed that he was doing well. (AR 1010-17, 1034, 1046, 1073.) In September 2017, Plaintiff described symptoms of chest pain and dizziness, but no shortness of breath, orthopnea, nocturnal dyspnea, or dyspnea with exertion. (AR 1037.) Dr. Weiss noted that Plaintiff's symptoms only occurred with more than normal physical activity and his exercise tolerance had improved to a half mile. (*Id.*) Dr. Weiss observed that Plaintiff's treatment included fluid restriction, ACE inhibitors, beta blockers, antiarrhythmics, and his pacemaker; and he reported good compliance with treatment. (*Id.*) Dr. Weiss ordered an echocardiogram, instructed Plaintiff to call if worrisome symptoms appeared, and scheduled a follow-up appointment.

The November 2017 echocardiogram revealed severe global hypokinesis and akinesis of the septum, anterior wall, and apex. (AR 1033, 1065.) At several appointments during the same time period noted above, cardiovascular reviews revealed no distention in the bilateral jugular veins and normal points of maximal impulse; Plaintiff's heart exhibited a regular rate

and rhythm; he had normal heart sounds without murmurs, clicks, rubs, gallops, or bruits; he had normal S1 and S2 sounds; and he had strong and equal bilateral carotid pulses. (AR 1031 (July 2018), 1034 (January 2018), 1038 (September 2017), 1046 (May 2017), 1064 (February 2016), 1076 (June 2017).) At several appointments, upper extremity reviews also revealed normal pulses, no edema, and normal motor functioning. (AR 1035 (January 2018), 1039 (September 2017), 1076 (June 2017).) In January 2018, Dr. Weiss reviewed Plaintiff's objective findings and instructed Plaintiff to follow up as needed and call if worrisome symptoms appeared. (AR 1033-35.)

In July 2018, Plaintiff presented with chest pain, shortness of breath, paroxysmal nocturnal dyspnea, and dyspnea with exertion. (AR 1030.) He recorded an ejection fraction of 20 to 25%. (*Id.*) A physical examination revealed no chest pain, chest tenderness chest pressure, palpitations, lightheadedness, or cyanosis; normal heart sounds without murmurs, clicks, rubs, gallops, or bruits; and Plaintiff had normal S1 and S2 sounds. (AR 1030-31.) An upper extremity review revealed normal pulses, no edema, and normal motor functioning. (AR 1032.) Dr. Weiss again instructed Plaintiff to call the office if worrisome symptoms appeared, follow up in six months, and ordered another echocardiogram. (*Id.*)

### C. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform sedentary work, "except he can occasionally climb ladders but never ropes or scaffolds, and he should avoid even moderate exposure to hazardous machinery and unprotected heights." (AR 97.) The ALJ's RFC did not include a sitting limitation. The ALJ made the following findings in support of his assessment.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with

the medical and other record evidence. (AR 97-98.) The ALJ summarized Plaintiff's medical history, which is detailed above. (AR 98.) He found that the medical evidence supported Plaintiff's allegation that he suffered from heart problems, but did not support a more limited restriction upon Plaintiff's ability to perform basic work functions, as Plaintiff appeared to improve with treatment and the record was replete with normal examination findings. (*Id.*) Plaintiff's treatment also appeared conservative during follow-up appointments. (*Id.*) Moreover, evidence in the record that Plaintiff asked a medical provider to fill out unemployment paperwork was inconsistent with a claim for disability. (*Id.*)

Turning to the opinion evidence, the ALJ "afford[ed] great weight to the State agency opinions and little weight to Dr. Lazarraras' [sic] opinion."[6] (AR 99.) The ALJ first reasoned that the opinion of Dr. Weiss appeared to be based on Plaintiff's subjective complaints.[7] (*Id.*) Second, the medical evidence indicated that Plaintiff "could work at the sedentary exertional level with postural restrictions without a need for unscheduled breaks, position changes, unscheduled breaks or absences, or further limited standing, walking, or sitting." (*Id.*) Third, the ALJ concluded that the objective evidence was inconsistent with Plaintiff's testimony that he could only walk a block. (*Id.*)

The ALJ also afforded only partial weight to Plaintiff's testimony, finding it was not entirely consistent with the medical record, and the record contained no references regarding difficulties sitting. (*Id.*)

---

[6] The ALJ's opinion appears to contain a typographical error, which somewhat obscures its meaning. The ALJ stated that he "afford[ed] great weight to the State agency opinions and little weight to Dr. Lazarraras' [sic] opinion." (AR 99.) But Dr. Lizarraras *is* the stage agency physician whose opinion was presented to the ALJ. The ALJ's analysis suggests that while he wrote that he gave little weight to the opinion of Dr. "Lazarraras," he intended to type Dr. Weiss's name. Plaintiff acknowledges this error in the Joint Stipulation, but does not argue that it is a basis for remand. (*See* Joint Stip. at 5 n.1.)

[7] In his decision, the ALJ actually stated that "Dr. Lizarraras' opinion appeared to be based upon the claimant's subjective complaints." (AR 99.) However, given that the ALJ gave great weight to Dr. Lizarraras's opinion, whose opinion was based on the longitudinal record evidence he was provided, and he never actually examined Plaintiff (unlike Dr. Weiss) (*see* AR 192 (noting no contact with claimant)), the ALJ's statement appears to be an error. Thus, it appears that the ALJ likely meant to write that Dr. Weiss's opinion was the one based on Plaintiff's subjective statements.

10

### D. Analysis

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because it fails to include a sitting limitation for vocational consideration. (Joint Stip. at 5-8.) Specifically, the evidence shows that Plaintiff could sit no more than six hours, the ALJ failed to include this in his RFC assessment, and, thus, the VE gave insubstantial testimony and proposed alternative jobs that Plaintiff could perform based on an incomplete hypothetical. (*Id.* at 5-6, 9.) The ALJ then relied on the VE's testimony to support a finding that Plaintiff was not disabled because he could perform jobs that existed in significant number in the national economy, *i.e.*, a conclusion that was materially tainted by the VE's testimony. (*Id.*) In any event, a conflict exists between the duties of one of the jobs identified by the VE (document preparer) and the assessed limitation that Plaintiff could have no exposure to hazardous machinery. (*Id.* at 8-9.)

At the core of Plaintiff's argument is that even if the ALJ limited Plaintiff to sedentary work, he should have explicitly stated that Plaintiff was limited to sitting no more than 6 hours in an 8-hour day, because sedentary work can still require more than 6 hours of sitting in a given day. (Joint Stip. at 5-10.) The record contains no objective evidence concerning Plaintiff's ability to sit for extended periods. Only the opinions of Dr. Lizarraras and Weiss contain sitting limitations, and the ALJ only credited the opinion of Dr. Lizarraras, who opined that Plaintiff could sit with normal breaks for a total of 6 hours in an 8-hour workday. (AR 195.) The parties do not dispute that Plaintiff was limited to 6 hours of sitting in a given workday. (*See* Joint Stip. at 11-12.) However, the Commissioner is incorrect that Plaintiff's ability to "sit for 6 hours and stand for 2 hours in an 8-hour workday . . . equates to the full sit/stand requirements of sedentary exertion work[.]" (*Id.* at 11.) Sedentary work requires between 6 and 8 hours of sitting. *Vertigan v. Halter*, 260 F.3d 1044, 1052 (9th Cir. 2001) ("In a work environment requiring sedentary work, the Social Security Rules require necessary sitting as the ability to do such for six to eight hours a day."). Sedentary work can require

11

seven or eight hours of sitting. *Id.* (citing Soc. Sec. Rul. 83-10); *Karey G. v. Saul*, Case No. CV 19-1540-KES, 2020 WL 4194097, at *2 (C.D. Cal. July 21, 2020).

Plaintiff correctly asserts that the ALJ never asked the VE to consider a hypothetical person limited to sitting for 6 hours per day. Plaintiff further observes, and the Court agrees, that the DOT's narrative descriptions of the jobs the VE identified that Plaintiff could perform based on the ALJ's RFC assessment do not explicitly state their standing and sitting requirements over the course of a given day, although they are considered sedentary work occupations. (*See* Joint Stip. at 7-8 (citing DOT 209.587-010 (addresser), 205.367-014 (charge account clerk), and 249.587-018 (document preparer).) Because the ALJ did not ask the VE to consider the hypothetical with the explicit 6-hour sitting limitation, there is no evidence that the VE's alternative jobs' sitting requirements do not exceed 6 hour per day— they well might. *See Karey G.*, 2020 WL 4194097, at *2 (making similar findings in nearly identical circumstances). The Court, therefore, cannot conclude that the ALJ's failure to include a sitting limitation in the RFC and the hypothetical posed to the VE was harmless error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (defining harmless error as "inconsequential to the ultimate nondisability determination"); *Karey G.* 2020 WL 4194097, at *2. Accordingly, remand is warranted for reconsideration of: (1) whether Plaintiff's RFC should include a limitation on sitting and, if not, why not; and (2) how, if at all, that sitting limitation affects Plaintiff's ability to perform the alternative jobs testified to by the VE.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that one of the jobs identified by the VE was in conflict with part of the ALJ's RFC assessment that Plaintiff could not handle hazardous machinery. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

//

## II. The ALJ's Evaluation of Plaintiff's Subjective Statements

### A. Legal Standard

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quotation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008) (providing that court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about her pain and limitations by referring to the factors set forth in 20 C.F.R. § 404.1529(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other

factors concerning an individual's functional imitations and restrictions." Soc. Sec. Rul. 16-3p. However, longstanding Ninth Circuit precedent prohibits the Commissioner from rejecting subjective pain statements on the sole ground that they are not fully corroborated by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

**B. Plaintiff's Subjective Statements**

In January 2019, Plaintiff testified at the hearing before the ALJ. (AR 175-84.) Plaintiff stated that at the time of hearing, he was not working, and he had not worked since October 2015. (AR 176.) Plaintiff described his prior work as a picker machine operator and construction laborer, and discussed the heavy weight of pallets he had to lift in those jobs, which was between 50 and 100 pounds. (AR 177-79.) Plaintiff testified that he had problems walking long distances, and could only walk one block before being out of breath, feeling dizzy and nauseous, and needing to rest. (AR 179-80.) After walking, he usually sat for 10 to 15 minutes. (AR 180.) He sometimes had problems standing in place and could stand for 15 minutes before getting dizzy and needing to rest for 10 minutes. (*Id.*) He sometimes had trouble sitting in a chair, and could sit for 20 minutes before feeling dizzy and nauseous and needing to get up and change positions. (AR 180-81.)

Plaintiff could lift 10 to 20 pounds, and if he tried to lift something heavier he would "probably pass out," but he had never pushed himself far enough to discover whether that was true. (AR 181.) He could do chores, including washing dishes, sweeping, and vacuuming, but had to take breaks every 10 to 15 minutes because he felt "wiped out" while doing those tasks. (*Id.*) Plaintiff took medications for his condition that lowered his blood pressure, and made him feel nauseous and dizzy. (AR 181-82.) He did not receive any additional treatment for his condition, apart from the implantation of a defibrillator pacemaker years earlier. (AR 182.) Plaintiff opined that he would not be able to perform his past work anymore because the lifting

requirements were too heavy and the pace too fast. (AR 182-83.) He also described his family history of major heart problems. (AR 183.)

Plaintiff testified that he could sometimes drive (once a week), but he did not do his own grocery shopping. (*Id.*) Although his sister did most of the shopping, Plaintiff stated there was nothing that physically prevented him from doing his own shopping. (*Id.*) Plaintiff's typical day consisted of getting up, taking a shower, doing dishes if necessary, going for a walk, and coming home. (AR 184.) He stated he would alternate between walking one block and resting, but never went too far from the house. (*Id.*) Plaintiff spent his free time with his daughter, and his hobbies included reading and watching television. (*Id.*)

### C. The ALJ's Decision

Applying the two-step procedure, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other record evidence. (AR 97-98.) The ALJ afforded partial weight to Plaintiff's testimony, as it was not entirely consistent with the medical record, which indicated a level of functionality greater than that to which he testified. (AR 99.) Moreover, the record contained no references regarding difficulties sitting. (*Id.*)

### D. Analysis

Plaintiff argues that that the ALJ's RFC assessment failed to consider Plaintiff's unimproved and progressive symptoms of shortness of breath, and his fluctuating condition as documented by echocardiograms. (Joint Stip. at 13-16.) Plaintiff also maintains that the ALJ erroneously discounted Plaintiff's testimony on the basis that he asked a provider to certify unemployment paperwork and because treatment notes showed that Plaintiff could walk

farther than the distances to which he testified.  (*Id.* at 16-17.)  Finally, Plaintiff contends the ALJ erred in discounting Plaintiff's testimony because the record contained no references regarding sitting difficulties, and he often denied dizziness and shortness of breath.  (*Id.* at 17-18.)

Plaintiff's arguments in this section appear to conflate separate points—first, that the reasons provided by the ALJ to support his RFC assessment were insufficient (the subject of the previous section of this Order); and second, that the ALJ erred in his credibility analysis.  For the reasons discussed in the previous section, remand is warranted for reevaluation of Plaintiff's RFC because the ALJ posed an incomplete hypothetical to the VE.  Notwithstanding the comingling of Plaintiff's arguments in this section, for the reasons discussed below, remand is also warranted because the ALJ erred in his evaluation of Plaintiff's subjective statements.

In evaluating a claimant's credibility "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the alleged symptoms.  *Burch*, 400 F.3d at 680; *Rollins*, 261 F.3d at 857; *see* 20 C.F.R. § 1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  However, in tandem with other legitimate reasons for discrediting a claimant's testimony, inconsistency with objective record evidence may serve as part of the basis for an adverse credibility determination.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms."); *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Here, the ALJ only provided one reason for his decision to give partial weight to Plaintiff's testimony: the fact that it was not entirely consistent with the medical record. (AR 99.) The ALJ then cited examples of those inconsistencies, including evidence showing Plaintiff could walk farther than one block (*id.* (citing AR 1059 (June 2016))), his statements throughout the record at various medical appointments that he was not experiencing dizziness or shortness of breath (*id.* (citing AR 6F 1030 (July 2018), 1041 (June 2017), 1066 (January 2016), 1078 (June 2017))), and the absence of record evidence supporting Plaintiff's allegation that he had difficulty sitting (*id.*). Although Plaintiff's statements may be inconsistent with the objective record evidence, the ALJ erred in his credibility analysis because he is not permitted to reject Plaintiff's subjective complaints "based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680 (emphasis added). There may be additional reasons for discounting Plaintiff's statements that find support in the record, but the ALJ did not cite them and the Court will not conjure them *ab initio*. *See Orn*, 495 F.3d at 630 (holding that the Court will "not affirm the ALJ on a ground upon which he did not rely"). Accordingly, the ALJ's failure to discount Plaintiff's subjective statements based on additional permissible reasons, supported by substantial evidence, constitute legal error and warrants remand of this case to the Agency for proper evaluation of Plaintiff's subjective statements.

The Commissioner argues that the ALJ offered additional reasons for giving partial weight to Plaintiff's subjective statements, including the fact that Plaintiff's condition appeared to improve with treatment, he received conservative treatment, and he asked his provider to fill out unemployment paperwork. (Joint Stip. at 20-22.) However, a closer review of the ALJ's decision reveals that the Court's comments about Plaintiff's treatment regimen, improvement, and his interactions with providers were conclusions drawn by the ALJ about

17

the objective and opinion record evidence, not assessments of Plaintiff's credibility. (*See* AR 98-99.) The record may suggest that Plaintiff's symptoms were relatively mild and well-managed with treatment. However, it is well established that because a claimant's "pain testimony may establish greater limitations than can medical evidence alone," *Burch*, 400 F.3d at 680, the fact that the record shows mild symptoms that were managed and improved with treatment and which are consistent with Plaintiff's ability to perform a range of physical activity cannot alone serve as a basis for discounting Plaintiff's credibility. *See, e.g.*, *Figueroa v. Colvin*, Case No. CV 14-6522-GJS, 2015 WL 4331300, at *2 (C.D. Cal. July 15, 2015) (remanding for further proceedings because ALJ failed to provide clear and convincing reasons for discounting claimant's credibility "apart from the lack of objective medical evidence"); *Caballero v. Colvin*, Case No. EDCV 12-1366-SP, 2013 WL 2121253, at *4 (C.D. Cal. May 14, 2013) (remanding for further proceedings because ALJ erred in rejecting plaintiff's testimony based on daily activities, and remaining reason, lack of objective medical evidence "[could not] alone constitute a clear and convincing reason for discounting plaintiff's complaints of pain"); *see also Browning v. Astrue*, 2010 WL 1511667, at *8 (D. Ariz. Apr. 15, 2010) (finding that ALJ rejection of claimant statements based solely on inconsistency with objective medical evidence was not harmless error because ALJ did not give other clear and convincing reasons for discounting the statements).

Accordingly, the ALJ failed to properly evaluate Plaintiff's subjective statements in accordance with the relevant factors set out in the regulations. 20 C.F.R. § 404.1529(c). Thus, remand for reevaluation of Plaintiff's subjective statements is warranted.

//
//
//
//
//
//

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 10, 2021

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE